**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION**

| | |
|---|---|
| Kelvin Lamont Byrd and Tamara Monique Byrd, as the Natural Parents and appointed Personal Representatives of the Estate of Z.B., a deceased minor, <br><br> Plaintiffs, <br><br> vs. <br><br> The United States of America and Family Health Centers, Inc., <br><br> Defendants. | Civil Action No.: 5:17-01579-JMC <br><br> **COMPLAINT** <br> (Jury Trial Demanded) |

Plaintiffs, by and through their undersigned counsel, complaining of the Defendants, hereby allege as follows:

## PARTIES

**Plaintiffs:**

1. Plaintiffs, Kelvin Lamont Byrd (hereinafter by name or "KLB") and Tamara Monique Byrd (hereinafter by name or "TMB"), are the duly appointed Personal Representatives of the Estate of Z.B., a deceased minor (hereinafter "Decedent"). They bring this action on behalf of Decedent's estate for damages recoverable pursuant to S.C. Code Section 15-5-90, and for damages recoverable by Decedent's statutory beneficiaries pursuant to S.C. Code Section 15-51-10, et. seq.

**Defendants:**

2. The United States of America is a proper party to this action which is being brought in part pursuant to the Federal Tort Claims Act., 28 U.S.C. § 2671, et. seq.

1

3. Family Health Centers, Inc., located in Orangeburg, South Carolina (hereinafter "FHC"), is a federally supported health center and is governed by the South Carolina Department of Health and Human Services.

4. The Federally Supported Health Centers Assistance Act of 1992 (Pub.L. 102-501) provides coverage to federally supported health care centers and their employees for acts or omissions which occur on or after January 1, 1993, or when the health center is deemed eligible for coverage, whichever is later. FHC is a federally supported health center and was eligible for federal tort claim act coverage prior to any acts giving rise to liability alleged herein. Therefore, FHC is a Public Health Service covered by 42 U.S.C. § 233 (a) for its acts and omissions in the care and treatment of Plaintiff Tamara Monique Byrd and her deceased child, Z.B.

5. Defendants USA and FHC have attending physicians, nurses, and other staff who are their agents, servants, and employees, and all acts or omissions complained of herein, performed by said agents, servants, and employees occurred during the course and scope of such agency and/or employment and is therefore, imputed to both Defendants.

6. Furthermore, Defendants' negligent acts, omissions, and liability includes that of their agents, principals, employees, and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, apparent authority, agency, ostensible agency, and/or respondeat superior.

## JURISDICTION AND VENUE

7. This Court has jurisdiction for this matter pursuant to its federal question jurisdiction as provided for by 28 U.S.C. §§ 1331 and 1346 and in compliance with 28 U.S.C. §§1346(b), 2671-2680 et. seq., commonly known as the "Federal Tort Claims Act," which vests exclusive subject matter jurisdiction of Federal Tort Claims litigation in federal district courts.

8.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this district and division because a substantial part of the events or omissions giving rise to this claim occurred in this district.

9.     On or about April 11, 2016, Plaintiffs Tamara Monique Byrd and Kelvin Lamont Byrd submitted an administrative claim (Form 95) to the appropriate claims officer in the Department of Health and Human Services, Hubert M. Humphrey Building, 200 Independence Avenue, SW, Washington, DC 20201.  On May 3, 2016, Plaintiffs' counsel received a letter from same requesting additional information and documentation.  On July 13, 2016, Plaintiffs' counsel responded to the request.  To date a letter of denial has not been received, but more than six (6) months have passed and Plaintiffs are hereby exercising their option of considering the claim denied.

## DAMAGES

10.     USA employs medical professionals who provide clinical care to patients through the FHC.  USA has different medical specialties at FHC, including, but not limited to, obstetrics, gynecology, and nursing services.

11.     Because USA provides different services to its patients via different staff, it is subject to different occurrences of negligence, gross negligence, recklessness, and/or willful and wanton conduct.

12.     There are multiple occurrences of the breach of the standards of care in this case and, each breach (or occurrence) can be stacked to create several different "caps" (depending on what a judge ultimately decides).

13.     There are no actual caps on the medical malpractice allegations if Plaintiffs prove Defendant USA's (through its agents and/or employees) conduct was grossly negligent or reckless.

14. As such, unlimited damages are available on the medical malpractice claims (and/or recoverable) articulated herein against Defendant USA.

15. In addition, because there are no caps on general or ordinary negligence in South Carolina, there is not limitation on the amount available or recoverable pursuant to Plaintiffs' general negligence claim below.

## GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

16. Plaintiffs are informed and believe that at all times material to this Complaint, Defendants' employees and/or agents were acting on behalf of, or in place of, Defendant in making decisions regarding the care of TMB and Decedent ("ZB") – her unborn child at the time.

17. Plaintiff Tamara Monique Byrd presented to FHC on December 1, 2014.

18. On December 1, 2014, an FHC agent and/or employee confirmed her pregnancy.

19. Tamara Monique Byrd had a history of diabetes and FHC agents and/or employees were aware of this history in 2014 and/or 2015.

20. Tamara Monique Byrd's medications – Glucotrol, Lipitor and Vistaril – were discontinued while she was pregnant.

21. TMB's diabetes mellitus was to be controlled by diet.

22. She attended several appointments with Defendants for the supervision of her pregnancy during December 2014 and January 2015.

23. On January 29, 2015, she presented to FHC with complaints of headaches and elevated blood sugar at 11 weeks and 4 days of gestation.

24. On this visit, she was instructed to increase fluids and underwent an early 3-hour Glucose Tolerance Test.

25. The 3-hour Glucose Tolerance Test (GTT) produced the following results: Fasting: 113 mg/dl; 1 hour: 276 mg/dl; 2 hours: 157 mg/dl; and 3 hours: 101 mg/dl.

26. In response to her GTT results, Mrs. Byrd was instructed to take 5 mg of Glyburide twice daily.

27. On February 23, 2015, she again presented to FHC and on this visit, her urine was glucose positive.

28. No additional counseling, or changes in her medication, were made during her February 23, 2015 visit at FHC.

29. On May 12, 2015, Mrs. Byrd presented to FHC for her regularly scheduled OB checkup.

30. The urinalysis during the checkup revealed that her glucose was measured at 2000 or more mg/dl.

31. Despite this result, again no additional counseling or changes in her medication were made during her May 12, 2015 visit at FHC.

32. On May 18, 2015, she presented to FHC with complaints of pelvic pressure without contractions.

33. On June 12, 2015, Mrs. Byrd presented to The Orangeburg Regional Medical Center for lower abdominal pain.

34. The urinalysis performed on June 12, 2015 revealed Mrs. Byrd's Glucose to be greater than 1000.

35. On June 16, 2015, she again presented to FHC with worsening right inner thigh pain.

36.     Mrs. Byrd's urinalysis on this visit revealed glucose of 2000 or more mg/dl and trace Albumin.

37.     She was instructed to take 5 mg of Glyburide before breakfast and her ultrasound revealed a large fetus for her current stage of pregnancy.

38.     On June 30, 2015, Mrs. Byrd returned to FHC with abdominal and vaginal pain.

39.     On this occasion, Mrs. Byrd's urinalysis revealed that her glucose was 100, Albumin +(30 mg/dl), and that she had trace Ketones. She was scheduled for a routine check-up in 2 weeks.

40.     On July 3, 2015, she presented to the Orangeburg Regional Medical Center with a headache starting the day before.

41.     Mrs. Byrd's urinalysis revealed a glucose greater than 1000 mg/dl. Mrs. Byrd was instructed to follow-up with FHC within 2 to 4 days.

42.     She later presented to the Orangeburg Regional Medical Center on July 9, 2015 for abdominal and pelvic pain.

43.     She was monitored overnight and her Glucose POC was 147.

44.     On July 13, 2015, Mrs. Byrd presented to the Orangeburg Regional Medical Center with complaints of abdominal pain.

45.     Her glucose POC on this visit was 116-160.

46.     Mrs. Byrd was discharged home on Procardia on July 14, 2015.

47.     On or about July 15, 2015, Plaintiff Tamara Monique Byrd presented to Orangeburg Regional Medical Center with complaints of edema in her feet and hands.

48.     Mrs. Byrd was discharged home by Dr. Moore of FHC with instructions to keep her next appointment and to continue all medications as ordered.

49. On July 17, 2015, Plaintiff Tamara Monique Byrd presented to FHC for a non-stress test.

50. She later presented to FHC on July 20, 2015 for a repeat non-stress test.

51. Mrs. Byrd's glucose was 500, Albumin was +(30mg/dl) and she again had trace Ketones. She was asked to follow up in two weeks.

52. On July 24, 2015, Plaintiff Tamara Monique Byrd presented to FHC with complaints of both feet hurting when she walks.

53. On July 25, 2015, she presented to the Emergency Room at Orangeburg Regional Medical Center.

54. An ultrasound revealed fetal stress and an ominous fetal heart rate.

55. After a period of time at the Hospital, Mrs. Byrd was prepped for a cesarean section and her child was delivered limp, apneic, and cyanotic.

56. Defendants' through their agents, servants and/or employees failed to provide adequate medical and nursing care which resulted Plaintiff Tamara Monique Byrd's gestational diabetes being left untreated.

57. Had proper follow-up and treatment been performed on Mrs. Byrd, her unborn child, Z.B., would not have been large enough in-utero to cause a prolapsed cord and ultimately death.

58. An affidavit from a qualified medical expert regarding all Defendants is being contemporaneously filed with this Complaint.

59. The affidavit sets forth certain breaches of the standard of care by Defendants, and/or their agents and/or employees.

60. Neither the affidavit, nor the allegations contained herein, are an all-inclusive list of negligence which will be attributed to Defendants, or to their agents and/or employees.

61. Additionally, the type(s) and or description(s) of damages to Plaintiffs and Decedent, as described herein, is not intended to be an all-inclusive list of damages suffered by them.

**FOR A FIRST CAUSE OF ACTION**
(Negligence – Survivorship Cause of Action)

62. Plaintiffs hereby incorporate by reference and re-allege every allegation in Paragraphs 1 – 64 of this Complaint as if fully set forth herein.

63. Defendants, through their agents and/or employees, undertook the duty to render medical care to TMB and her unborn child in accordance with prevailing and acceptable professional standards of care in the national community.

64. Notwithstanding said undertaking, and while Mrs. Byrd and her unborn child were under the care of Defendants' agents and/or employees, Defendants departed from prevailing and acceptable professional standards of care in their treatment and were thereby negligent, careless, grossly negligent, reckless, and acted in violation of the duties owed to them. As such, Defendants are liable for one or more of the following acts of omission or commission, any or all of which are departures from the prevailing and acceptable professional standards of care:

    a. In failing to obtain an accurate and complete patient history for Mrs. Byrd;

    b. In failing to properly assess Mrs. Byrd's condition and failing to ensure the proper preventive tests and diagnostic procedures were performed on her;

    c. In failing to recognize the severity of Mrs. Byrd's diabetes;

    d. In failing to appropriately treat and closely monitor Mrs. Byrd diabetes;

  e. In failing to implement policies and procedures to screen, identify, and provide comprehensive, multi-disciplinary treatment to patients at risk of diabetes; and

  f. In such other ways, as may be shown at trial.

73. As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness, and departure from the professional standards of care by Defendants and their physicians, nurses, agents, and/or employees as noted above, Decedent suffered from severe debilitating injuries which caused death. Prior to the child's death, Decedent suffered pain and underwent consciousness of attempting to live. Additionally, Decedent's estate has incurred medical bills and funeral expenses. Plaintiffs, as Decedent's Personal Representatives, are therefore entitled to recover from Defendants a sum of money to compensate Decedent's estate for all damages allowable under the survival action. All damages should be in an amount determined by a judge at trial.

## FOR A SECOND CAUSE OF ACTION
(Negligence – Wrongful Death)

65. Plaintiffs hereby incorporate by reference and re-allege every allegation in Paragraphs 1– 67 of this Complaint as if fully set forth herein.

66. As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness, and departure from the professional standards of care by Defendants and their physicians, nurses, agents, and/or employees as noted above, Decedent suffered from severe debilitating injuries which ultimately resulted in his death and caused his beneficiaries to lose his society, consortium, and to suffer wounded feelings, shock, pain and suffering, and other damages allowed to be recovered pursuant to a wrongful death action. Plaintiffs, as Decedent's Personal Representatives, are therefore entitled to recover from Defendants a sum of money to compensate

his beneficiaries for all damages allowable under the wrongful death action. All damages should be in an amount determined by a judge at trial.

## FOR A THIRD CAUSE OF ACTION
(General Negligence)

67. Plaintiffs hereby incorporate by reference and re-allege every allegation in Paragraphs 1– 69 of this Complaint as if fully set forth herein.

68. Defendants and their physicians, nurses, agents, and/or employees, undertook the duty to render care to Mrs. Byrd and her unborn child, Z.B. in accordance with the prevailing professional standards in the national community.

69. FHC and/or the USA have a duty to provide physicians, nurses and other staff adequately trained and able to provide any routine and/or non-medical care to patients.

70. FHC and/or the USA have the right or power to direct and control the way their employees and/or agents provide care and operate the business of delivering routine, ministerial and/or non-medical care for a fee through its medical practice.

71. "[N]ot every action taken by a medical professional in a hospital or doctor's office necessarily implicates medical malpractice and, consequently, the requirements of [S.C. Code Ann.] Section 15-79-125." Dawkins v. Union Hosp. Dist., 408 S.C. 171, 178, 758 S.E.2d 501, 504 (2014).

72. "[A]t all times, the medical professional must 'exercise ordinary and reasonable care to ensure that no unnecessary harm [befalls] the patient.'" Id. at 178, 758 S.E.2d at 504 (further citations omitted).

73. "The statutory definition of medical malpractice found in section 15-79-110(6) does not impact medical providers' ordinary obligation to reasonably care for patients with respect to nonmedical, administrative, ministerial, or routine care." Id.

10

74. "Thus, medical providers are still subject to claims sounding in ordinary negligence." Id.

75. Notwithstanding said undertaking, and while Decedent was under Defendants' care, and that of their physicians, nurses, agents, and/or employees, said Defendants, and their physicians, nurses, agents, and/or employees departed from prevailing and acceptable professional standards of routine, ministerial, administrative, and/or non-medical care and treatment of Mrs. Byrd and Decedent and were thereby negligent, careless, grossly negligent, reckless and in violation of the duties owed to Mrs. Byrd and Decedent and are therefore liable for one or more of the following acts of omission or commission:

   a. In the nurses failing to communicate their findings to specific medical personnel that could address the findings;
   b. In acting or failing to act in a way that would be appropriate to a member of the public;
   c. In failing to render proper routine care;
   d. In failing to render proper ministerial care;
   e. In failing to render proper administrative care;
   f. In failing to render proper non-medical care;
   g. In failing to staff its facility appropriately;
   h. In failing to train its employees, nurses, physicians, and/or agents in an appropriate manner;
   i. In continuing to employ certain employees when Defendant knew or should have known that doing so would result in a patient's harm; and
   j. In such other ways, as may be ascertained through discovery.

11

As a direct and proximate result of the negligence, gross negligence, recklessness, willful and wanton departure from proper routine, ministerial, administrative or non-medical care by Defendants, and their physicians, nurses, agents, and/or employees as noted above, Decedent's estate incurred medical bills, expenses associated with a funeral, and other damages allowed to be recovered pursuant to a survival action.  Similarly, Plaintiffs incurred damages that they are entitled to personally, and in addition and as noted herein, Plaintiffs, as personal representatives of their deceased child's estate, are entitled to recover from Defendants a sum of money to compensate the estate and all beneficiaries for all damages allowable under the wrongful death action – all under a general negligence theory.  All damages should be in an amount determined by a jury at the trial in this case.

**FOR A FOURTH CAUSE OF ACTION**
(Negligent Infliction of Emotional Distress)

76. Plaintiffs hereby incorporate by reference and realleged every allegation of Paragraphs 1-78 of this Complaint as if fully set forth herein verbatim.

77. Plaintiffs are Decedent's natural parents.

78. Plaintiffs were both present when the events described in this Complaint took place.

79. Plaintiffs witnessed Decedent's death.

80. Plaintiffs were personal eyewitnesses to the events described in this Complaint.

81. The Defendants and their employees, nurses, agents, etc. were negligent in different ways singularly, or in combination. (Negligence which was witnessed by Plaintiffs).

82. The result of Defendants' (and their employees, physicians, nurses, and agents) negligence, gross negligence, reckless, willful, and/or wanton conduct was the foreseeable injuries to Mrs. Byrd and Decedent and the death of Decedent.

83. Because of the emotional distress caused by witnessing the events described in this Complaint, the death of Decedent, etc., Plaintiffs suffered physical symptoms capable of objective diagnosis.

84. Plaintiffs have also suffered severe and permanent injury because of Defendants' (and that of their agents, employees, nurses, etc.) negligent infliction of emotional distress.

85. As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness, and departures from the professional standards of care by all Defendants and their agents and/or employees as noted above, Mr. and Mrs. Byrd suffered extreme emotional distress, sleeplessness, pervasive thoughts, and other harms and losses.

Wherefore, Plaintiffs pray for judgment against the USA and FHC for actual damages and consequential damages in an amount to be determined by a judge (and/or jury) at trial, for the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

**MCGOWAN, HOOD, & FELDER, LLC**

s/S. Randall Hood
S. Randall Hood
MCGOWAN, HOOD, & FELDER, LLC
Federal ID Number: 6103
1539 Health Care Drive
Rock Hill, South Carolina 29732
803-327-7800 (phone)
rhood@mcgowanhood.com

Shawn B. Deery
MCGOWAN, HOOD, & FELDER, LLC
Federal ID Number: 09819
1517 Hampton Street
Columbia, South Carolina 29201
(803) 779-0100 (Columbia)
sdeery@mcgowanhood.com

Rock Hill, South Carolina

June 16, 2017